IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WELLS FARGO, NATIONAL ASSOCIATION, a national association, | ) |
| | ) CIVIL ACTION NO. |
| Plaintiff, | |
| | ) 10-0578-CB |
| v. | |
| | ) |
| STANLEY E. SMALL, THOMAS K. STANLEY, SR., and THEODORE W. MASON, | ) |
| | ) |
| Defendants. | |
| | ) |

## ORDER

This matter comes before the Court on a Motion for Summary Judgment (the "Motion") filed by Plaintiff, Wells Fargo, National Association, on May 2, 2011. None of the Defendants have filed a response to the motion.[1] Pursuant to Local Rule 7.2(b), failure to file a brief in opposition to a motion for summary judgment constitutes an admission that no material factual dispute exists. *See also Celotex v. Catrett*, 477 U.S. 317, 322 (1986) (party is entitled to summary judgment unless the nonmovant is able to demonstrate that a genuine dispute exists as to a fact which is material to his case and on which he bears the burden of proof). Therefore, the question before the Court is purely one of law. Upon careful review and consideration, the Court concludes that the motion for summary judgment is due to be granted.

---

[1] Defendants Stanley E. Small and Thomas K. Stanley are represented by counsel. After the summary judgment motion was filed but before a response was due, defense counsel filed a motion to withdraw from representation of Theodore Mason. The Court granted that motion by order which also extended the deadline for Mason's summary judgment response and warned Mason of the consequences of failing to respond.

**Findings of Fact**

Wells Fargo is a national banking organization with its principal place of business in South Dakota. Wells Fargo is successor in interest to Wachovia Bank, National Association ("Wachovia") and acquired various assets of Wachovia, including the notes and loan documents at issue in this case.

Stanley E. Small ("Defendant Small") and Thomas K. Stanley, Sr. ("Defendant Stanley") are individual citizens and residents of the State of Alabama. Theodore W. Mason ("Defendant Mason" and collectively with Defendant Small and Defendant Stanley, "Defendants") is an individual citizen and resident of the State of Pennsylvania.

*The First Loan Note*

On or about April 4, 2008, Wachovia loaned Defendants $300,000.00 (the "First Loan"). In support of the First Loan, Defendants executed that certain Promissory Note dated April 4, 2008 and made payable to Wachovia in the original principal amount of $300,000.00 which was renewed, extended and modified by that certain Promissory Note dated February 27, 2009 in the principal amount of $216,604.86 (the "First Loan Note"). Defendants, each as a "Borrower" under the First Loan Note, are "jointly and severally obligated" for all indebtedness due under the First Loan Note.

The First Loan Note was to be repaid in consecutive monthly payments of $8,022.40, plus accrued interest, commencing on March 15, 2009 ad continuing on the same day of each month thereafter until fully paid, with all principal and accrued interest due and payable on May 15, 2011.

*Default Under the First Loan Note*

The First Loan Note provides that a default occurs under the First Loan Note when there is a default in payment or performance of any other obligations under any other loans between Defendants, individually or collectively, and Wells Fargo.

Specifically, the First Loan Note states as follows:

> **DEFAULT**. If any of the following occurs, a default ("Default") under this Note shall exist: **Nonpayment; Nonperformance.** The failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. . . . **Cross Default**. At Bank's option, any default in payment or performance of any obligation under any other loans, contracts or agreements of Borrower, any Subsidiary or Affiliate of Borrower, any general partner of or the holder(s) of the majority ownership interest of Borrower with Ban or its affiliates ("Affiliate" shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time, except that the term "Borrower" shall be substituted for the term "Debtor" therein; "Subsidiary" shall mean any business in which Borrower holds, directly or indirectly, a controlling interest).
>
> \* \* \*
>
> **REMEDIES UPON DEFAULT.** If a Default occurs under this Note or any Loan Documents, Bank may at any time thereafter, take the following actions: . . . **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Bank's option, any or all other Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable, provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, all Obligations (other than Obligations under any swap agreement referenced above) shall automatically and immediately be due and payable.

(*Maggi Aff. Exhibit "A"; see also Exhibit "I" to Complaint, Doc. No. 1, p. 3*)

In April 2010 Defendants defaulted under the Second Loan Note (defined below), which resulted in a cross-default of the First Loan Note. By letter dated June 30, 2010 Plaintiff

provided Defendants with written notice of the cross-default, expressly accelerated the indebtedness due under the First Loan Note and demanded payment of all outstanding charges due and owing under the First Loan Note (the "First Loan Demand Letter").

***Indebtedness Due Under the First Loan Note***

Defendants' last payment on the First Loan Note was made on June 9, 2010 in the amount of $16,551.54, and no subsequent payments have been made on the First Loan Notes. Despite demand by Plaintiff, Defendants have failed to honor their obligations under the First Loan Note.

After application of all just credits, the aggregate outstanding balance due under the First Loan Note as of April 8, 2011, exclusive of attorneys' fees and costs, was $95,175.25, which consists of $87,074.60 in principal, $4,325.55 in interest, and $3,775.10 in late fees and other charges due under the First Loan Note. Since April 8, 2011, fees, costs and interest have accrued and continue to accrue pursuant to the First Loan Note, with interest accruing at a per diem rate of $14.18.

***The Second Loan Note***

On or about September 29, 2008, Wachovia loaned Defendants $691,666.68 (the "Second Loan"). In support of the Second Loan, Defendants executed that certain Promissory Note dated September 29, 2008 and made payable to Wachovia in the original principal amount of $691,666.68, which was renewed, extended and modified by that certain Promissory Note dated October 21, 2009 in the principal amount of $691,665.12 (the "Second Loan Note").

Defendants, each as a "Borrower" under the Second Loan Note, are "jointly and severally obligated" for all indebtedness due under the Second Loan Note. The Second Loan Note was to be repaid in consecutive monthly payments of accrued interest only, commencing on November

15, 2009 and continuing on the same day of each month thereafter until fully paid, with all principal and accrued interest due and payable on April 15, 2010 (the "Maturity Date").

*Default Under the Second Loan Note*

In April 2010, Defendants defaulted under the Second Loan Note for, *inter alia*, failing to timely pay the payment obligations as set forth in the Second Loan Note. Defendants failed to make payment in full of the principal and accrued interest due under the Second Loan Note on the Maturity Date. By letter dated June 30, 2010, Plaintiff provided Defendants written notice of the default under the Second Loan Note and demanded payment of all outstanding charges due and owing under the Second Loan Note (the "Second Loan Demand Letter").

*Indebtedness Due Under the Second Loan Note*

Defendants last payment on the Second Loan Note was made on March 25, 2010 in the amount of $9,306.74, and no subsequent payments have been made on the Second Loan Note since that time. Despite demand by Plaintiff, Defendants have failed to honor the obligations under the Second Loan Note.

After application of all just credits, the aggregate outstanding balance due under the Second Loan Note as of April 8, 2011, exclusive of attorneys' fees and costs, was $793,580.36, which consists of $691,665.12 in principal, $76,909.21 in interest, and $25,006.03 in late fees and other charges due under the Second Loan Note. Since April 8, 2011, fees, costs and interest have accrued and continue to accrue pursuant to the Second Loan Note, with interest accruing at a per diem rate of $211.34.

*The Third Loan Note*

On or about April 9, 2008, Wachovia loaned Defendant Small $200,000.00 (the "Third Loan," and collectively with the First Loan and the Second Loan, the "Loans"). In support of

this loan, Defendant Small executed that certain Promissory Note dated April 9, 2008 and made payable to Wachovia in the original principal amount of $200,000.00, which was renewed, extended and modified by that certain Promissory Note dated April 21, 2009 in the principal amount of $199,981.89 (the "Third Loan Note" and collectively with the First Loan Note and the Second Loan Note, the "Notes").  The Third Loan Note was to be repaid in consecutive monthly payments of principal equal to $1,666.52 plus accrued interest, commencing on May 15, 2009 and continuing on the same day of each month thereafter until fully paid, with all principal and accrued interest due and payable on April 15, 2014.

*Default Under the Third Loan Note*

Like the First Loan Note, the Third Loan Note provides that a default occurs under the Third Loan Note when there is a default in payment or performance of any other obligations under any other loans between Defendants, individually or collectively, and Wells Fargo.

The Third Loan Note states as follows:

> **DEFAULT**.  If any of the following occurs, a default ("Default") under this Note shall exist:  **Nonpayment; Nonperformance.**  The failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. . . . **Cross Default**.  At Bank's option, any default in payment or performance of any obligation under any other loans, contracts or agreements of Borrower, any Subsidiary or Affiliate of Borrower, any general partner of or the holder(s) of the majority ownership interest of Borrower with Bank or its affiliates ("Affiliate" shall have the meaning as defined in 11 U.S.C. §101, as in effect from time to time, except that the term "Borrower" shall be substituted for the term "Debtor" therein; "Subsidiary" shall mean any business in which Borrower holds, directly or indirectly, a controlling interest).
>
> \* \* \*
>
> **REMEDIES UPON DEFAULT**.  If a Default occurs under this Note or any Loan Documents, Bank may at any time thereafter, take the following actions: . . . **Acceleration Upon Default**.  Accelerate the maturity of this Note and, at Bank's option, any or all other

6

> Obligation, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, which shall be due in accordance with an governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, all Obligations (other than Obligations under any swap agreement referenced above) shall automatically and immediately be due and payable.

*(Maggi Aff., Exhibit "C"; see also Exhibit "3" to Complaint, Doc. No. 1, p. 3).*

As a result of Defendants' default under the Second Loan Note in April 2010, a default arose under the Third Loan Note pursuant to the cross-default provision in the Third Loan Note. By letter dated June 30, 2010, Plaintiff provided Defendant Small with written notice of the cross-default, expressly accelerated the indebtedness due under the Third Loan Note and demanded payment of all outstanding charges due and owing under the Third Loan Note (the "Third Loan Demand Letter").

***Indebtedness Due Under the Third Loan Note***

Defendant Small's last payment on the Third Loan Note was made on June 9, 2010 in the amount of $2,375.11, and no subsequent payments by Defendant Small have been made on the Third Loan Note. Despite demand by Plaintiff, Defendant Small has failed to honor his obligations under the Third Loan Note.

On February 17, 2011, Plaintiff foreclosed on real property securing the Third Loan Note (the "Foreclosure") for a credit bid of $194,060.67 (the "Bid"). After application of all just credits, including the Bid, there is no outstanding balance due under the Third Loan Note as of April 8, 2011, except for those attorney fees and costs incurred by Plaintiff in the collection of the indebtedness due under the Third Loan Note.

*Attorney's Fees and Expenses Associated With Collection of the Notes*

Excluding those attorney fees and expenses incurred by Plaintiff as a result of the Foreclosure, as of April 27, 2011 Plaintiff has incurred attorneys fees in the amount of $30,358.50 and other costs and expenses in the amount of $730.58 in pursuing the collection of the indebtedness due under all of the Notes.

The Notes each provide in relevant part as follows:

> **ATTORNEYS' FEES AND OTHER COLLECTION COSTS.**
> Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and expert fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

*(Maggi Aff., Exhibit "A", Exhibit "B" and Exhibit "C"; see also Exhibit "1" to Complaint, Doc. No. 1, p. 3; Exhibit "2" to Complaint, Doc. No. 1, p. 3; and Exhibit "3" to Complaint, Doc. No. 1, p. 2).*

As of April 27, 2011 attorneys' fees incurred by Plaintiff in connection with the collection of those amounts due under the Notes are $30,358.50, and costs and expenses incurred by Plaintiff in connection with the collection of those amounts due under the Notes are $730.58. These fees, costs and expenses were incurred for the collection of all the Notes and excludes those fees, costs, and expenses associated with the Foreclosure.

## **Conclusions of Law**

This Court has jurisdiction over this action under 28 U.S.C. § 1332 as Wells Fargo is diverse from all Defendants, and the amount in controversy exceeds the Court's minimal jurisdictional limit of $75,000.00 exclusive of interest and costs. As a result of the merger

between Wells Fargo and Wachovia, Wells Fargo is the holder of the Notes and the loan documents associated with the Notes and is entitled to enforce them through this action.

Federal Rule of Civil Procedure 56(c) requires summary judgment to be granted: "If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002)(quoting *Anderson*, 477 U.S. at 249). "When a motion for summary judgment has been made properly, the burden of production shifts to the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."' *Celotex [Corp. v. Catrett]*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), e))." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 841 (11th Cir. 1990). "[W]here … the movant satisfies its initial evidentiary burden of showing that there are no genuine issues of material fact to be decided at trial, the burden shifts to the nonmovant to demonstrate that such genuine issues of fact exist." *McCorvey v. Smith*, 2009 WL 2176344, *3 (S.D. Ala. 2009).

Under Alabama law, a promissory note is *prima facie* evidence of the holder's right to "recover the face [amount] of the note, interest, and, upon proof of their value [and where the

between Wells Fargo and Wachovia, Wells Fargo is the holder of the Notes and the loan documents associated with the Notes and is entitled to enforce them through this action.

Federal Rule of Civil Procedure 56(c) requires summary judgment to be granted: "If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002)(quoting *Anderson*, 477 U.S. at 249). "When a motion for summary judgment has been made properly, the burden of production shifts to the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."' *Celotex [Corp. v. Catrett]*, 477 U.S. at 324, 106 St.Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), e))." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 841 (11th Cir. 1990). "[W]here … the movant satisfies its initial evidentiary burden of showing that there are no genuine issues of material fact to be decided at trial, the burden shifts to the nonmovant to demonstrate that such genuine issues of fact exist." *McCorvey v. Smith*, 2009 WL 2176344, *3 (S.D. Ala. 2009).

Under Alabama law, a promissory note is *prima facie* evidence of the holder's right to "recover the face [amount] of the note, interest, and, upon proof of their value [and where the

between Wells Fargo and Wachovia, Wells Fargo is the holder of the Notes and the loan documents associated with the Notes and is entitled to enforce them through this action.

Federal Rule of Civil Procedure 56(c) requires summary judgment to be granted: "If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002)(quoting *Anderson*, 477 U.S. at 249). "When a motion for summary judgment has been made properly, the burden of production shifts to the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."' *Celotex [Corp. v. Catrett]*, 477 U.S. at 324, 106 St.Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), e))." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 841 (11th Cir. 1990). "[W]here … the movant satisfies its initial evidentiary burden of showing that there are no genuine issues of material fact to be decided at trial, the burden shifts to the nonmovant to demonstrate that such genuine issues of fact exist." *McCorvey v. Smith*, 2009 WL 2176344, *3 (S.D. Ala. 2009).

Under Alabama law, a promissory note is *prima facie* evidence of the holder's right to "recover the face [amount] of the note, interest, and, upon proof of their value [and where the

note so provides], its attorney's fees." *Chilton Warehouse & Mfg. Co. v. Lewis*, 57 So. 100, 101 (Ala. App. 1911); *see also Nobles v. Bank of Eclectic*, 115 So. 13, 15 (Ala. 1927) ("[T]he recitals in the face of the note are *prima facie* evidence of the intention of the parties thereto."); *Cary v. Bynum*, 136 So. 877, 878 (Ala. App. 1931) ("As a general rule, the possession and production of a note uncanceled and unextinguished by indorsements of payments or otherwise is *prima facie* evidence that the holder is the owner and that the note is unpaid.").

The appearance of the defendant's name on the face of the note is *prima facie* evidence that he or she is the maker of the note. *Culwell v. Edmondson*, 129 So. 276, 278 (Ala. 1930). And, "a note sued on is *prima facie* evidence of sufficient consideration for the execution thereof." *Day v. Ray E. Friedman & Co.*, 395 So. 2d 54, 56 (Ala. 1981).

Alabama law provides that the proffer of a copy of the note and affidavit testimony as to the amounts due under the note, as well as the defendant's failure to make the required payments, is sufficient to establish a plaintiff's case to recover on a note. *See Griffin v. American Bank*, 628 So. 2d 540, 543 (Ala. 1993) (stating that bank entitled to summary judgment on promissory note where bank's president submitted affidavit attaching note and stating that borrower made no payments on note, and borrower did not offer evidence in defense); *see also Chaffin v. Hall*, 439 So. 2d 67, 69 (Ala. 1983) ("'[p]ersons who sign negotiable instruments are charged with liability according to the terms thereof'") (*quoting* 10 C.J.S. Bills and Notes §32(a) (1938)); *Chilton Warehouse & Mfg. Co. v. Lewis*, 57 So. 100, 101 (Ala. App. 1911) (stating that upon introduction of note into evidence burden shifts to defendant to show that the holder is not entitled to recover thereon).

The Notes, as attached to the Complaint as Exhibits 1, 2 and 3 and authenticated by the affidavit of Kenneth R. Maggi attached to the Motion, constitute *prima facie* evidence of

Defendants obligations under the Notes, which include the face amount of the Notes, plus interest accruing thereon, costs and fees. As the holder of the Notes, Wells Fargo is entitled to enforcement.

Defendants have defaulted under the Second Loan Note for failure to make payment as set forth in the Second Loan Note, and consequentially, through the cross default provisions contained in the First Loan Note and the Third Loan Note, defaulted under the First Loan Note and the Third Loan Note. The last payment made by the Defendants towards any of the Notes was in June 2010. Defendants failed to satisfy their payment obligations as set forth in the Notes and are in default under the Notes.

Wells Fargo made demands on Defendants for payment of all the outstanding charges due and owing under each of the Notes, and Defendants have failed to pay the outstanding indebtedness owed on the Notes.

Elements of a breach of contract under Alabama law are: (1) that a valid contract exists; (2) that plaintiff performed under the contract; (3) that defendant failed to perform under the contract; and (4) that plaintiff was damaged as a result. *Reynold Metal Co. v. Hill*, 825 Ala. 100, 106 (Ala. 2002).

The evidence before the Court establishes Defendants' liability for breach of the Notes, and more specifically shows that the Notes are valid contracts and are held in due course by Plaintiff. Further, the evidence before the Court shows that Plaintiff performed its obligations under the Notes while Defendants failed to perform their obligations under the Notes. Lastly, the evidence before the Court shows that as a result of the Defendants' failure to perform under the Notes, Plaintiff was damaged.

To rebut Plaintiff's *prima facie* case, Defendants may not merely rely on the allegations made in an Answer, but must "demonstrate that such genuine issues of fact exist. *McCorvey v. Smith*, 2009 WL 2176344 at *3 (S.D. Ala. July 15, 2009). Defendants have offered no evidence that can create a genuine issue for trial. Given that the Notes are in default and remain unpaid, Defendants cannot present sufficient evidence showing that there exists a genuine issue of material fact. Accordingly, Plaintiff is entitled to recover the entire amount of indebtedness due and owing under the Notes.

The Notes provide for the recovery of attorneys' fees and costs in the event of a default and state that Defendants will pay Plaintiff for collection expenses, including without limitation, attorneys' fees and legal expenses associated with the enforcement and collection of amounts due under the Notes. The Notes all contain the following provision with regards to attorney fees and collection costs:

> **ATTORNEYS' FEES AND OTHER COLLECTION COSTS.**
> Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

*(Maggi Aff., Exhibit "A", Exhibit "B", and Exhibit "C"; Exhibit "1" to Complaint, Doc. No. 1, p. 3; Exhibit "2" to Complaint, Doc. No. 1, p. 3; and Exhibit "3" to Complaint, Doc. No. 1, p. 2).*

Under Alabama law, it is well settled that provisions relating to the payment of attorney's fees are enforceable. *See e.g., Subway Restaurants, Inc. v. Madison Square Assoc., Ltd.*, 613 So. 2d 1255, 1257 (Ala. 1993) (holding that "[i]n Alabama, in state law causes of action, attorney fees are recoverable as part of the costs of the action. . . when provided in a contract"); *Knight v.*

12

*Hired Hand Green, Inc.*, 775 So. 2d 218, 222 (Ala. Civ. App. 1999) (holding that the plaintiff "was necessarily entitled to . . . an attorney fee for collection of that balance, pursuant to the clear terms of the contract"); *Smith v. Combustion Resources Eng'r, Inc.,* 431 So. 2d 1249, 1252 (Ala. 1983); *Lewis v. Haleyville Mobile Home Supply, Inc.*, 447 So. 2d 691, 692-93 (Ala. 1984); *Chilton Warehouse & Mfg. Co. v. Lewis*, 57 So. 100, 101 (Ala. App. 1911)(stating promissory note including provision for attorneys' fees is prima facie evidence of right to recover attorneys' fees upon proof of their value).

The affidavit of Patrick J. Clarke (the "Clarke Affidavit") establishes that, as of April 27, 2011 attorneys' fees incurred by Plaintiff in connection with the collection of those amounts due under the Notes are $30,358.50, and costs and expenses incurred by Plaintiff in connection with the collection of those amounts due under the Notes are $730.58. Clarke's Affidavit further establishes that these fees, costs and expenses were incurred for the collection of all the Notes and excludes those fees, costs, and expenses associated with the Foreclosure.

Plaintiff is entitled to recover attorneys' fees and costs incurred in enforcing the Notes. *See Robbins v. Smith*, 495 So. 2d 577, 580 (Ala. 1986) (holding that "a reasonable attorney fee may be set by the court in its discretion. 'The Court is presumed to have knowledge, even without evidence, from which it may set such a fee.'").

There being no genuine issue of material fact for trial, summary judgment is therefore:

(a) **GRANTED** in favor of Wells Fargo on Count I of its Complaint against Defendants, jointly and severally, in the amount of $95,175.25, plus additional interest accrued from April 8, 2011 to the date of this judgment in the amount of $1,474.72, plus post-judgment interest, plus attorneys' fees, costs and expenses associated with the collection of the First Loan Note in the amount of $10,363.03 for a total judgment in the amount of **$107,013.00**.

(b)     **GRANTED** in favor of Wells Fargo on Count II of its Complaint against Defendants, jointly and severally, in the amount of $793,580.36, plus additional interest accrued from April 8, 2011 to the date of this judgment in the amount of $21,979.36, plus post-judgment interest, plus attorneys' fees, costs and expenses associated with the collection of the Second Loan Note in the amount of $10,363.03 for a total judgment in the amount of **$825,922.75**.

(c)     **GRANTED** in favor of Wells Fargo on Count III of its Complaint against Defendant Small for attorneys' fees, costs and expenses associated with the collection of the Third Loan Note in the amount of $10,363.02 for a total judgment in the amount of **$10,363.02**.

**DONE** and **ORDERED** this the 21st day of July, 2011.

s/*Charles R. Butler, Jr.*
**Senior United States District Judge**